ACCEPTED
01-14-00726-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/29/2015 1:24:11 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-14-00726-CR

_____

**In the
Court of Appeals
For the
First District of Texas
At Houston**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

1/29/2015 1:24:11 PM

CHRISTOPHER A. PRINE
Clerk

_____

**On appeal from the 338th District Court of
Harris County, Texas
No. 1406622**

_____

**JOSE AGUILERA,**
*Appellant*
**v.**
**THE STATE OF TEXAS,**
*Appellee*

---

### *ANDERS* BRIEF FOR APPELLANT

---

Emily Detoto
State Bar No.: 00797876
917 Franklin, 4th Floor
Houston, Texas 77002
Telephone: (713) 227-2244
Facsimile: (713) 222-5840
emilydetoto@mac.com

Megan E. Smith
State Bar No: 24076196
917 Franklin, Suite 310
Houston, Texas 77002
Telephone: (713) 899-5438
megan@megansmithlaw.com

Counsel for Appellant

Counsel for Appellant

**ORAL ARGUMENT NOT REQUESTED**

## Identity of Parties and Counsel

***Appellate Counsel for Appellant, Mr. Jose Aguilera***

| | |
|---|---|
| Emily Detoto | Megan E. Smith |
| State Bar No.:  00797876 | State Bar No.:  24076196 |
| 917 Franklin, 4th Floor | 917 Franklin, Suite 310 |
| Houston, Texas 77002 | Houston, Texas 77002 |
| Telephone:  (713) 227-2244 | Telephone:  (713) 899-5438 |
| emilydetoto@mac.com | megan@megansmithlaw.com |

***Appellate Counsel for Appellee, The State of Texas***

| | |
|---|---|
| Ms. Devon Anderson | Mr. Alan Curry |
| District Attorney | Assistant—Appeal |

Harris County District Attorney's Office
1201 Franklin, Suite 600
Houston, Texas 77002
Telephone:  (713) 755-5800

***Trial Counsel for Appellant, Mr. Jose Aguilera***

Mr. Elihu Dodier
State Bar No.:  05938200
4718 Edison Street
Houston, Texas 77009
Telephone:  (713) 655-9300

***Trial Counsel for Appellee, The State of Texas***

| | |
|---|---|
| Ms. Devon Anderson | Ms. Shannon Drehner, Assistant |
| District Attorney | State Bar No.: 24074155 |
| Ms. Cara Burton, Assistant | Mr. Aaron Burdette, Assistant |
| State Bar No.: 24068399 | State Bar No.: 24055228 |

Harris County District Attorney's Office
1201 Franklin, Suite 600
Houston, Texas 77002
Telephone:  (713) 755-5800

# Table of Contents

**Page(s)**

Identity of Parties and Counsel…………………………………………………ii

Index of Authorities…………………………………………………………vii

Statement of the Case…………………………………………………………1

*Anders* Issues Presented…………………………………...…………………1

Statement of Facts……………………………………………………………1

Summary of the Argument…………………………...………………………..4

Arguable Grounds for Review…………………………………………………...5

Issue Number One……………………………………………………………...5

**DEFENSE COUNSEL DID NOT PROVIDE INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO PROVE UP MR. AGUILERA'S ELIGIBILITY FOR COMMUNITY SUPERVISION.**

Issue Number Two……………………………………………………………5

**DEFENSE COUNSEL DID NOT PROVIDE INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBJECT TO THE ADMISSION OF MR. AGUILERA'S STATEMENT.**

Standard of Review Pertinent to Issues I and II………………………………5

Issue I Argument…………………………………………………………...6

   A. A Defendant Must Plead and Prove Community
      Supervision Eligibility………………………………………………6

B. Mr. Aguilera Cannot Show on Direct Appeal a Reasonable Probability That the Result of the Proceedings Would Have Been Different…………..9

C. Conclusion……………………………………………………………………11

Issue II Argument……………………………………………………….........11

A. Defense Counsel's Legitimate Trial Strategy Will not be Questioned on Appeal…………………………………………………………...11

B. Conclusion……………………………………………………….................11

Issue Number Three…………………………………………………………12

## THE ADMISSION OF THE TRANSLATION UNDER RULE 1009 WAS NOT ERROR.

A. The 45-day Requirement was Waived by Mr. Aguilera………………...12

B. The Trial Court Provided a Proper Limiting Instruction………………..13

C. Conclusion…………………………………………………………………13

Issue Number Four…………………………………………………………..14

## OTHER MATTERS DO NOT PROVIDE NON-FRIVOLOUS ISSUES FOR APPEAL.

A. Sufficiency of the Indictment……………………………………………14

B. Any Adverse Pretrial Rulings Affecting the Course of the Trial, Including but not Limited to Rulings on Motions to Suppress, Motions to Quash, and Motions for a Speedy Trial…………………………………………14

C. Any Adverse Rulings During Trial on Objections or Motions, Including but not Limited to Objections to Admission or Exclusion of Evidence, Objections Premised on Prosecutorial or Judicial Misconduct, and Motions for Mistrial……………………………………………………..15

     a. Hearsay…………………………………………………………...15

     b. Clarifying the video……………………………………………16

     c. Facebook photographs…………………………………………17

     d. Relevance………………………………………………………20

D. Any Adverse Rulings on Post-Trial Motions, Including
   Motions for a New Trial……………………………………………21

E. Jury Selection……………………………………………...............21

F.  Jury Instructions………………………………………………...22

     a. Law of parties instruction given………………………………23

     b. The trial court's instruction on the law of parties
        was not erroneous…………………………………………..24

G. Sufficiency of the Evidence, Including a Recitation of the
   Elements of the Offense and Facts and Evidence Adduced
   at Trial Relevant to the Offense Upon Which
   Conviction is Based……………………………………………….26

     a. The evidence adduced at trial………………………….…26

        i. Theft………………………………………………27

        ii. Intent……………………………………………27

        iii. Deadly weapon…………………………………27

     b. The evidence was sufficient…………………………………...28

H. Any Failure on the Part of the Appellant's Trial Counsel to Object to Fundamental Error………………………………………..28

I. Any Adverse Rulings During the Punishment Phase on Objections or Motions…………………………………………………...28

J. Whether the Sentence Imposed was Within the Applicable Range of Punishment…………………………………………………30

K. Whether the Written Judgment Accurately Reflects the Sentence That was Imposed and Whether any Credit was Properly Applied…………………………………………………...31

L. Examination of the Record to Determine if the Appellant was Denied Effective Assistance of Counsel…………………………....31

Prayer………………………..……………..………………………..…31

Certificate of Service…………………………………………..……….32

Certificate of Compliance………………………………………………32

Certificate of Notice to Appellant.……………………………………..33

Notice to Client………………………………………………………….33

# Index of Authorities

**Page(s)**

**Statutes**

Tex. Code Crim. Proc. art. 35.16(b)…………………………………………………21

Tex. Code Crim. Proc. art. 35.16(d)…………………………………………………21

Tex. Code Crim. Proc. art. 42.12 § 4(e)……………………………………………..7

Tex. Penal Code § 7.01(a)…………………………………………………………..25

Tex. Penal Code § 7.02(a)(2)………………………………………………………..25

Tex. Penal Code § 12.32(a)…………………………………………………………30

Tex. Penal Code § 12.32(b)…………………………………………………………30

Tex. Penal Code § 29.02……………………………………………….........14, 26

Tex. Penal Code § 29.03…………………………………………………………15, 26

Tex. Penal Code § 29.03(b)…………………………………………………………30

Tex. Penal Code § 31.03…………………………………………………………15, 26

Tex. R. App. Proc. § 9.4……………………………………………………………..32

Tex. R. App. Proc. § 34.5(g)…………………………………………………………33

Tex. R. App. Proc. § 34.6(h)…………………………………………………………33

Tex. R. Evid. 401…………………………………………………………………….21

Tex. R. Evid. 403…………………………………………………………………….20

Tex. R. Evid. 404(b)……………………………………………………………..19, 20

Tex. R. Evid. 1009(a)………………………………………………………………12

Tex. R. Evid. 1009(f)………………………………………………………………..12

**Federal Cases**

*Anders v. California*, 386 U.S. 738 (1967)………………..……...………...4

*Strickland v. Washington,* 466 U.S. 668 (1984)…………………………..5, 8, 11

**Texas Court of Criminal Appeals**

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985)………………...…24

*Barrios v. State*, 283 S.W.3d 348 (Tex. Crim. App. 2009)………………….…24

*Black v. State*, 723 S.W.2d 674 (Tex. Crim. App. 1986)………………………25

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)……………………..28

*Dickey v. State*, 22 S.W.3d 490 (Tex. Crim. App. 1999)………………………25

*High v. State,* 573 S.W.2d 807 (Tex. Crim. App. 1978)………………………...4

*Leday v. State,* 983 S.W.2d 713 (Tex. Crim. App. 1998)…………………..16, 29

*Mansfield v. State*, 306 S.W.3d 773 (Tex. Crim. App. 2010)…………………...6

*State v. Ngo*, 175 S.W.3d 738 (Tex. Crim. App. 2005)(en banc)………………24

*Speth v. State*, 6 S.W.3d 530 (Tex. Crim. App. 1999)…………………………..6

*Stafford v. State*, 813 S.W.2d 503 (Tex. Crim. App. 1991)…………………4, 31

*Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999)………………6, 9, 11

*Valle v. State*, 109 S.W.3d 500 (Tex. Crim. App. 2003)………………………17

**Texas Intermediate Appellate Courts**

*Almendarez v. State*, 13-01-00044-CR, 2003 WL 1387208 (Tex. App.—Corpus Christi Mar. 20, 2003, no pet.)……………………………………..……9

*Amezquita v. State*, 14-01-00268-CR, 2002 WL 480343 (Tex. App.—Houston [14th Dist.] Mar. 28, 2002, no pet.)……………………………………….8, 10

*Caballero v. State*, 13-96-578-CR, 1997 WL 33643195 (Tex. App.—Corpus Christi Dec. 11, 1997, no pet.)……………………………………………...7

*Castrejon v. State*, 428 S.W.3d 179 (Tex. App.—Houston [1st Dist.] 2014, no pet.)……………………………………………………………………..12

*Crew v. State*, 07-00-0493-CR, 2002 WL 1290891 (Tex. App.—Amarillo June 11, 2002, no pet.)………………………………………………………….20

*Ervin v. State*, 331 S.W.3d 49 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd)………………………………………………………………………28

*Garcia v. State*, 308 S.W.3d 62 (Tex. App.—San Antonio 2009, no pet.)……...7

*Green v. State,* 658 S.W.2d 303 (Tex.App.-Houston [1st Dist.] 1983, pet. ref'd)......................................................................................................8

*Johnson v. State*, 425 S.W.3d 344 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd)…………………………………………………………….…15, 29, 30

*Peralta v. State*, 338 S.W.3d 598 (Tex. App.—El Paso 2010, no pet.)……...…13

*Snow v. State,* 697 S.W.2d 663 (Tex.App.-Houston [1st Dist.] 1985, pet. dism'd)………………………………………………………………………10

*Williams v. State*, 417 S.W.3d 162 (Tex. App.—Houston [1st Dist.] 2013), *reh'g overruled* (Jan. 21, 2014), *pet. ref'd* (May 7, 2014)…………………….…….5,6

*Williams v. State*, 942 S.W.2d 787 (Tex. App.—Fort Worth 1997, pet. ref'd)………………………………………………………………………25

## Statement of the Case

Appellant, Jose Aguilera, was charged by indictment with the felony offense of aggravated robbery. (CR at 11)[1]. Mr. Aguilera was found guilty by a jury. (CR at 89; RR Vol. 29 at 97). Punishment was assessed by the jury at 8.5 years in prison. (CR at 883; RR Vol. 4 at 74). Mr. Aguilera timely filed a Notice of Appeal. (CR at 108-09). Mr. Aguilera's brief was due January 16, 2015. Appellant's brief is currently late.

## *Anders* Issues Presented

1. Defense counsel did not provide ineffective assistance of counsel by failing to prove up Mr. Aguilera's eligibility for community supervision.

2. Defense counsel did not provide ineffective assistance of counsel by failing to object to the admission of Mr. Aguilera's statement.

3. The admission of the translation under Rule 1009 was not error.

4. Other matters do not provide non-frivolous issues for appeal.

## Statement of Facts

The complainant, Jose Reyes, went to a convenience store in Harris County on October 12, 2013 where two men approached and asked to borrow a car jack. (RR Vol. 3 at 32-36). After waiting about 15 minutes, Mr. Reyes drove down the street to a parking lot where the men had indicated they would be repairing a tire to ask for his tools. (RR Vol. 3 at 37-38). Mr. Reyes testified

---

[1] CR refers to Clerk's Record; RR refers to Reporter's Record.

1

that both men pulled out weapons and that Rambo pointed a revolver at his side and Pirata pointed a semiautomatic gun at his head. (RR Vol. 3 at 39-40, 42-43). Rambo and Pirata were the nicknames the men used during the encounter. (RR Vol. 3 at 42). Mr. Reyes testified that Rambo and Pirata took his wallet from his right pocket that contained 700 to 800 dollars in cash from his paycheck. (RR Vol. 3 at 33, 43-44). He also testified that both men were screaming at him, Pirata struck him in the face, and Rambo was saying "kill him, kill him." (RR Vol. 3 at 42-45, 72). Mr. Reyes thought the men were going to kill him. (RR Vol. 3 at 47). Rambo got in his car to leave and Pirata's weapon jammed, so Mr. Reyes took the opportunity to push Pirata and run away. (RR Vol. 3 at 45-46, 72-73). Mr. Reyes testified that shots were fired at him as he ran, but Rambo was already in the car. (RR Vol. at 45-47, 73). Officer Kyle Myers identified two fired shell casings and one full bullet at the scene consistent with Mr. Reyes' account of the incident. (RR Vol. 3 at 20-21).

Mr. Reyes immediately called the police to the scene. (RR Vol. 3 at 47-48). Then, Mr. Reyes went to visit his friend "Vanessa" who lived nearby and was familiar with the description and nicknames of the two men. (RR Vol. 3 at 48, 50-51). "Vanessa" pulled up pictures on Facebook that Mr. Reyes identified as Rambo and Pirata. (RR Vol. 3 at 53). The pictures were forwarded to the police, and Mr. Reyes later identified Mr. Aguilera in a photo spread with

Officer Horacio Pineda.  (RR Vol. 3 at 77, 87-89).  Mr. Reyes identified Mr. Aguilera in the courtroom as the Defendant who went by the nickname Rambo. (RR Vol. 3 at 57).  Officer Pineda testified that "Vanessa" wanted to remain anonymous, but that her phone number was included in the report.  (RR Vol. 4 at 24-25, 30). Officer Pineda arrested Mr. Aguilera at his construction job site after obtaining a warrant.  (RR Vol. 4 at 27-28).  Mr. Aguilera then gave a custodial statement after proper Miranda warnings.  (RR Vol. 2 at 170-173; Vol. 3 at 93; Vol. 4 at 9-13; Vol. 5 at 25-84).  The statement was video recorded and translated into English.  *Id.*  Mr. Aguilera identified his revolver during the statement and admitted to having it with him during the incident.  (RR Vol. 5 at 46, 72-74).  Mr. Aguilera identified the person needing help with his tire as "Oscar" or "Paisano," who he previously knew.  (RR Vol. 5 at 31-34, 50).  He claimed that Pirata, who he referred to as Emilio, had a personal dispute with "Oscar" regarding money.  (RR Vol. 5 at 42-43).  Mr. Aguilera admitted to being an "accomplice to a robbery."  (RR Vol. 5 at 78).

The jury found Mr. Aguilera guilty the same day that they started deliberations.  (RR Vol. 4 at 74).  The Prosecution called two witnesses during punishment to elicit testimony that Mr. Aguilera had two misdemeanor charges pending for failure to stop and give information and filing a false police report. (RR Vol. 4 at 94-95).  Marsha Johnson witnessed the car accident that led to Mr.

Aguilera fleeing the scene. (RR Vol. 4 at 77-85). There was no punishment evidence presented from the Defense. (RR Vol. 4 at 96). Defense counsel asked for a probated sentence and the Prosecution asked for no less than 30 years. (RR Vol. 4 at 101-03, 106). The jury sentenced Mr. Aguilera to 8.5 years in prison. (RR Vol. 4 at 107). Deliberations regarding guilt and punishment all occurred quickly within one day.

### Summary of the Argument

The United States Supreme Court has instructed court-appointed counsel: "Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." *Anders v. California*, 386 U.S. 738, 744 (1967). "[A]ppellate counsel must provide the reviewing court with a 'professional evaluation of the record demonstrating why there are no arguable grounds to be advanced.'" *Stafford v. State*, 813 S.W.2d 503, 510 n.3 (Tex. Crim. App. 1991)(citing *High v. State,* 573 S.W.2d 807, 812 (Tex. Crim. App. 1978)). This requires a discussion of the evidence at trial, including references to the record and applicable case law. *Id.* Appellate counsel is required to discuss anything that "might arguably support the appeal." *Id.* A copy of the *Anders* brief must be provided to the Appellant and he should be given time to respond if he so chooses. *Anders*, 386 U.S. at 744. This Court will then examine the

proceedings and make a determination as to whether an appeal is frivolous. *Id.*

Court-appointed counsel has reviewed the Reporter's Record and the Clerk's Record in Mr. Aguilera's case, and has determined that there are no non-frivolous issues to raise as set forth in this brief. Accordingly, court-appointed counsel respectfully requests permission to withdraw as attorney of record and to permit the Appellant, Mr. Jose Aguilera, to file any additional brief he deems necessary.

## Arguable Grounds for Review

**ISSUE I: DEFENSE COUNSEL DID NOT PROVIDE INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO PROVE UP MR. AGUILERA'S ELIGIBILITY FOR COMMUNITY SUPERVISION.**

**ISSUE 2: DEFENSE COUNSEL DID NOT PROVIDE INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBJECT TO THE ADMISSION OF MR. AGUILERA'S STATEMENT.**

## Standard of Review Pertinent to Issues I and II.

This Court reviews claims of ineffective assistance of counsel under a two-prong *Strickland*[2] analysis. *Williams v. State*, 417 S.W.3d 162, 181 (Tex. App.—Houston [1st Dist.] 2013), *reh'g overruled* (Jan. 21, 2014), *pet. ref'd* (May 7, 2014). An appellant must prove both prongs by a preponderance of the evidence: "(1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional error, there is a

---

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

reasonable probability that the result of the proceedings would have been different." *Id.* "A reasonable probability is a 'probability sufficient to undermine confidence in the outcome.'" *Id.*(citing *Strickland,* 466 U.S. at 694). The Court of Criminal Appeals has instructed:

> When handed the task of determining the validity of a defendant's claim of ineffective assistance of counsel, any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.

*Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)(internal citations omitted).

## ISSUE I ARGUMENT

### A. A Defendant Must Plead and Prove Community Supervision Eligibility.

A defendant must plead and prove that he has never been convicted of a felony to be eligible for community supervision. *Mansfield v. State*, 306 S.W.3d 773, 775 (Tex. Crim. App. 2010); *Speth v. State*, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999). The Code of Criminal Procedure instructs:

> A defendant is eligible for community supervision under this section only if before the trial begins the defendant files a written sworn motion with the judge that the defendant has not previously been convicted of a felony in this or any other state, and the jury

enters in the verdict a finding that the information in the defendant's motion is true.

Tex. Code Crim. Proc. art. 42.12 § 4(e).

The burden of pleading means that Defense counsel cannot rely on the Prosecution's failure to prove any prior felony convictions, as this is a "mischaracterization of the burden of proof on the issue of probation eligibility." *Caballero v. State*, 13-96-578-CR, 1997 WL 33643195, at *2 (Tex. App.—Corpus Christi Dec. 11, 1997, no pet.).

In the case at bar, Defense counsel properly filed Mr. Aguilera's sworn motion declaring his eligibility for probation. (CR at 64-65). However, this was never proven up before the jury. Defense counsel did not call any witnesses during punishment to prove up the eligibility, nor did he cross examine any prosecution witnesses regarding Mr. Aguilera's eligibility. Instead, during closing arguments in the punishment phase Defense counsel argued:

> If this man had a prior criminal history, if he had a prior conviction for a felony or even a misdemeanor, for that matter, you can bet your life that the State's attorney would have presented that to you, that he has prior felony convictions or that he has prior misdemeanor convictions. He does not.

(RR Vol. 4 at 98).

A misunderstanding of the applicable law by counsel "can never be a legitimate trial strategy." *Garcia v. State*, 308 S.W.3d 62, 75 (Tex. App.—San Antonio

7

2009, no pet.). The trial court instructed the jury on the option of community supervision and the Prosecution did not object or mention the lack of proof in the record. (CR at 93-94, 102-03). If the trial court had refused to instruct on the option of community supervision, this Honorable Court would have upheld that refusal on appeal. *Amezquita v. State*, 14-01-00268-CR, 2002 WL 480343, at *1(Tex. App.—Houston [14th Dist.] Mar. 28, 2002, no pet.)(citing *Green v. State,* 658 S.W.2d 303, 309 (Tex.App.-Houston [1st Dist.] 1983, pet. ref'd)). One of the jury's options for sentencing included:

> We, the Jury, having found the defendant, Jose Aguilera, guilty of aggravated robbery, assess his punishment at confinement in the institutional division of the Texas Department of Criminal Justice for _____ years and <u>further find that the defendant has never before been convicted of a felony</u> in this state or any other state and recommend community supervision of the sentence.

(CR at 102)(emphasis added).

The trial court also instructed the jury twice, "Statements or arguments of counsel are not evidence." (RR Vol. 3 at 8; Vol. 4 at 54). It is possible that the jury did not believe they could make the finding that Mr. Aguilera had never before been convicted of a felony based on the lack of evidence. Even if this Court were to find Mr. Aguilera has met his burden under the first *Strickland* prong, the second prong cannot be satisfied on direct appeal.

**B. Mr. Aguilera Cannot Show on Direct Appeal a Reasonable Probability That the Result of the Proceedings Would Have Been Different.**

> A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal. Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving such a serious allegation. In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel. To defeat the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.

*Thompson*, 9 S.W.3d at 813-14 (internal citations and quotations omitted).

First, Mr. Aguilera is unable to prove that he was actually eligible for community supervision based on the record for direct appeal purposes. Second, there is nothing in the record to show that the jury would have granted community supervision instead of 8.5 years imprisonment. *Almendarez v. State*, 13-01-00044-CR, 2003 WL 1387208, at *4 (Tex. App.—Corpus Christi Mar. 20, 2003, no pet.)("We find nothing in the record showing that the jury would have granted community supervision."). Mr. Aguilera was charged with a serious offense and the jury heard evidence that he held a gun to the Mr. Reyes' head. This offense carried a maximum punishment of life imprisonment. Moreover, the jury heard evidence of Mr. Aguilera causing a car accident,

fleeing the scene, and making a false report to police. Based on this evidence, this Court could find it reasonable that the jury would give an 8.5-year prison sentence. The Fourteenth Court of Appeals addressed a similar issue and found that the Appellant was unable to satisfy the prejudice prong:

> The right to be considered for probation is valuable, even if probation is not given, because the jury instruction concerning probation forcefully directs the jury's attention to the lowest punishment allowed by law. *Snow v. State,* 697 S.W.2d 663, 668 (Tex.App.-Houston [1st Dist.] 1985, pet. dism'd). Here, the charge did direct the jury's attention towards probation (though erroneously so, due to the missing proof). Nevertheless, the jury rejected the lower range of punishment and assessed a sentence in the middle of the range. Furthermore, given the severity of the accident, the impact of the accident on the complainant, and the evidence of appellant's repeated behavior of driving while intoxicated despite three separate interventions of the criminal justice system, appellant has failed to sustain his burden of showing prejudice so as to undermine confidence in the jury's sentence.

Amezquita v. State, 14-01-00268-CR, 2002 WL 480343, at *1-2 (Tex. App.—Houston [14th Dist.] Mar. 28, 2002, no pet.). In light of the aforementioned reasons, Mr. Aguilera is unable to prove by a preponderance of the evidence that there is a reasonable probability that the result of the proceedings would have been different.

## C. Conclusion.

Non-frivolous error cannot be raised based on ineffective assistance of counsel for failing to prove up Mr. Aguilera's eligibility for community supervision.

## ISSUE II ARGUMENT

## A. Defense Counsel's Legitimate Trial Strategy Will not be Questioned on Appeal.

Mr. Aguilera's custodial statement was admitted by agreement. (RR Vol. 2 at 170-173; Vol. 3 at 93; Vol. 4 at 9-13). A thorough review of the record reveals no apparent basis for a suppression of the statement. Defense counsel acknowledged on the record that the agreement to admit the statement was a strategic decision. (RR Vol. 2 at 171-172). "[J]udicial review must be highly deferential to trial counsel," and there is nothing in the record to satisfy a *Strickland* analysis. *Thompson*, 9 S.W.3d at 813 (internal citations omitted).

## B. Conclusion.

There is no non-frivolous issue for appeal based on the admission of Mr. Aguilera's statement.

**ISSUE III: THE ADMISSION OF THE TRANSLATION UNDER RULE 1009 WAS NOT ERROR.**

   **A. The 45-day Requirement was Waived by Mr. Aguilera.**

Texas Rule of Evidence 1009(a) requires:

> A translation of foreign language documents shall be admissible upon the affidavit of a qualified translator setting forth the qualifications of the translator and certifying that the translation is fair and accurate. Such affidavit, along with the translation and the underlying foreign language documents, shall be served upon all parties at least 45 days prior to the date of trial.

The Prosecution provided notice under this rule on July 22, 2014. (CR at 62-63). However, trial commenced with jury selection on August 13, 2014. (RR Vol. 2 at 4). The 45-day requirement had not been met at this time and the translation was admitted into evidence by agreement between the Prosecution and Defense. (RR Vol. 2 at 170-173; Vol. 3 at 93; Vol. 4 at 9-13). Mr. Aguilera chose to proceed to trial on August 13, 2014 and did not want the additional delay by waiting for the 45 days to pass under Rule 1009(a). (RR Vol. 47-48). Also, "The court, upon motion of any party and for good cause shown, may enlarge or shorten the time limits set forth in this Rule." Tex. R. Evid. 1009(f); *See Castrejon v. State*, 428 S.W.3d 179, 184-85 (Tex. App.—Houston [1st Dist.] 2014, no pet.)

12

**B. The Trial Court Provided a Proper Limiting Instruction.**

Upon admission of the translation, the trial court instructed the jury:

> Ladies and gentlemen, as State's Exhibit 14 is published for you, you have copies of State's Exhibit No. 13 to follow along with as that is presented to you. I want to give you an instruction with regard to that: That the official translation is the translation, which is the document that is State's Exhibit No. 13. By agreement of the parties, you have that to follow along. With regard to 13 and 14, the translation, that document 13 is the official translation. You will be allowed to watch the video for the purpose so that you can see the video, see what's going on in the video, including but not limited to tone of voice, other things with regard to that. So, you will be able to view that, follow along with it, see that. But with regard to the official translation, State's Exhibit 13 is the official translation. All right?
>
> (RR Vol. 4 at 12).

This limiting instruction was provided by agreement of the parties and was proper under the law. (RR Vol. 4 at 12); *Peralta v. State*, 338 S.W.3d 598, 606 (Tex. App.—El Paso 2010, no pet.).

**C. Conclusion.**

There is no non-frivolous error to be raised based on the admission of the translation under Rule of Evidence 1009.

**ISSUE IV: OTHER MATTERS DO NOT PROVIDE NON-FRIVOLOUS ISSUES FOR APPEAL.**

**A. Sufficiency of the Indictment.**

The indictment tracks the required elements in the Texas Penal Code for aggravated robbery. (CR at 11); Tex. Penal Code §§ 29.02-29.03; *See* Tex. Pen. Code § 31.03. The indictment was never subjected to a motion to quash. Thus, the indictment is sufficient.

**B. Any Adverse Pretrial Rulings Affecting the Course of the Trial, Including but not Limited to Rulings on Motions to Suppress, Motions to Quash, and Motions for a Speedy Trial.**

The following pretrial motion was filed and granted: Motion to Allow Defense Counsel Access to the Harris County Jail With Electronic Equipment. (CR at 17-19). Two Motions in Limine were filed pretrial but not ruled upon. (CR at 66, 68-73). There was a discussion on the record about a Motion to Suppress Mr. Aguilera's statement. (RR Vol. 2 at 170-71). However, there is not a Motion to Suppress on file. Instead, a Motion in Limine regarding Mr. Aguilera's statement was filed. (CR at 72-73). Prior to opening statements, Defense counsel withdrew any objection to Mr. Aguilera's statement for what

the trial court deemed and Defense counsel agreed were "strategic purposes." (RR Vol. 2 at 171-72). There were no pretrial rulings adverse to Mr. Aguilera.

**C.** **Any Adverse Rulings During Trial on Objections or Motions, Including but not Limited to Objections to Admission or Exclusion of Evidence, Objections Premised on Prosecutorial or Judicial Misconduct, and Motions for Mistrial.**

Defense counsel lodged numerous objections during trial. The trial court sustained several of them. Of those that were overruled, none of those rulings constituted non-frivolous appellate issues.

a. Hearsay

The Prosecution's first witness, Officer Kyle Myers, was asked, "To your knowledge, were they both known to be carrying a semiautomatic or was one carrying a different firearm?" (RR Vol. 3 at 18). Defense counsel objected to hearsay and stated, "He did not have personal knowledge of that information." *Id.* This objection was overruled. *Id.* Evidence of the types of firearms carried by Mr. Aguilera and Pirata was admitted without objection several times during trial. (RR Vol. 3 at 42-43; Vol. 5 at 46, 72-74). "Overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Johnson v.*

*State*, 425 S.W.3d 344, 346 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd)(citing *Leday v. State,* 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)).

b. Clarifying the video

Mr. Aguilera's video recorded statement to police and the official written translation were admitted without objection and by agreement. (RR Vol. 2 at 170-173; Vol. 3 at 93; Vol. 4 at 9-13); *see* Issue II, *supra*. This video was played for the jury during Officer Horacio Pineda's testimony because he was the officer in the video who took Mr. Aguilera's statement. (RR Vol. 4 at 13). The Prosecution stopped the video to ask Officer Pineda a question, which drew an objection from Defense counsel:

> Q. (BY MS. DREHNER) During your investigation you said that you had acquired some pictures from Vanessa from Facebook.
>
> A. Correct.
>
> Q. Did you use these photos during your questioning of the defendant and is this the picture that you are referring to?
>
> MR. DODIER: Your Honor, I'm going to object to Counsel trying to clarify what's being said and done in the video. If we're going to go through the video, we need to finish the video and then—
>
> THE COURT: Overruled.
>
> MR. DODIER: --if there's any other questions, that's my objection.
>
> (RR Vol. 4 at 13).

Officer Pineda conducted the interview and is permitted to answer questions where he has first hand knowledge of the events. Moreover, the line of questioning continued without objection. "[A] party must object each time the inadmissible evidence is offered or obtain a running objection." *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003).

c. Facebook photographs

As the questioning of Officer Pineda continued, two photographs (State's Exhibits 8 and 15) were admitted over defense objection. (RR Vol. 4 at 14-16; Vol. 5 at 17, 88). State's Exhibit 8 was a photograph of Mr. Aguilera without a shirt provocatively holding a revolver and wearing a type of pirate hat. (RR Vol. 5 at 17). State's Exhibit 15 was a photograph of Mr. Aguilera with Pirata. (RR Vol. 5 at 88). Mr. Aguilera was holding a revolver and Pirata was holding a semiautomatic firearm in the photograph. *Id.* The following exchanges occurred:

> Q. (BY MS. DREHNER) Showing what's been marked as State's Exhibit 8 for identification, what is this picture?
>
> A. It's a picture of Rambo holding the revolver that I showed to him during the interview.
>
> Q. Okay. And this is the one that he identified as being himself?
>
> A. Yes.

MS. DREHNER: Your Honor, at this time State would offer State's Exhibit 8 and tender to Defense counsel.

MR. DODIER: Your Honor, I'm going to object. This is not related to this offense at this time. It's 404(b) evidence and should not be admitted into evidence at this time.

THE COURT: Approach for a minute.

(At the Bench, on the record.)

THE COURT: This is --

MS. DREHNER: This is the revolver that he identifies as being the revolver that he brought to evidence.

THE COURT: It will be overruled. It's admitted

(RR Vol. 4 at 14).

…

Q. (BY MS. DREHNER) So, during your questioning, when you showed him a photo of the revolver, this is the Facebook photo that you showed him?

A. Yes.

Q. Did he confirm that this was indeed him in the picture and his revolver?

A. Yes, he did.

(RR Vol. 4 at 15)

…

Q. (BY MS. DREHNER) I'm going to stop again. Did you show him another photo from Facebook while you were interviewing him?

A. Yes, I did.

Q. Was this the same photo that you had received during the course of your investigation?

A. Yes, it was.

MS. DREHNER: Your Honor, may I approach?

THE COURT: Yes.

Q. (BY MS. DREHNER) Showing you what's been marked as State's Exhibit No. 15 for identification. Do you recognize this photo?

A. Yes, I do.

Q. Is this the photo that the defendant identified as being himself and Emilio?

A. Yes, it is.

MS. DREHNER: Your Honor, at this time the State would offer into evidence State's Exhibit 15.

MR. DODIER: Your Honor, at this time it's the same objection. He is embellishing an exhibit that is being produced in evidence. It should be looked at first before there is any more direct examination of the witness. It is also 404(b) evidence that should not be admitted at this time.

THE COURT: Let me see it. It's overruled. It's admitted.

(RR Vol. 4 at 15-16).

Texas Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

These photographs were not 404(b) evidence of other crimes or bad acts.

Simply holding a firearm in a photograph is not a crime or bad act, unless the

19

person is prohibited by law from possessing a weapon. *See Crew v. State*, 07-00-0493-CR, 2002 WL 1290891, at \*2-4 (Tex. App.—Amarillo June 11, 2002, no pet.). There was no evidence offered that Mr. Aguilera was prohibited from owning a firearm. Assuming *arguendo* that the photographs were 404(b) evidence, they were admissible to prove identity under Rule 404(b) and Mr. Aguilera identified himself and his weapon. A Rule 403 objection was not made. The photographs were potentially misleading and confusing to the jury under Rule 403, however, based on the same identity argument the photographs were still admissible and no error was preserved.

d. Relevance

During the re-direct examination of Officer Pineda, the following exchange occurred:

Q. (BY MS. DREHNER) In regards to Vanessa, is it common in law enforcement investigation to have anonymous witnesses?

A. Yes.

MR. DODIER: Your Honor, I'm going to object to that as not being relevant.

THE COURT: Overruled.

(RR Vol. 4 at 29).

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action

more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. Defense counsel thoroughly cross-examined Officer Pineda regarding the anonymity of "Vanessa," thus any follow-up question by the Prosecution was relevant. (RR. Vol. 4 at 24-26).

### D. Any Adverse Rulings on Post-Trial Motions, Including Motions for a New Trial.

No post-trial motions were filed.

### E. Jury Selection.

During jury selection, Defense Counsel and Counsel for the Prosecution came to an agreement on all challenges for cause. (RR Vol. 2 at 159, 162-64). Both sides were properly permitted to exercise 10 peremptory challenges. (RR Vol. 2 at 164; CR at 75-80); Tex. Code Crim. Proc. art. 35.16(b). Both sides were also properly permitted to exercise one additional peremptory challenge for the selection of one alternate juror. (RR Vol. 2 at 164; CR at 75-80); Tex. Code Crim. Proc. art. 35.16(d). The 12 jurors and one alternate juror were identified and seated in the jury box. (RR Vol. 2 at 166). Before the jury was sworn the trial court inquired:

Court: Any objections?
Ms. Drehner: No objections from the State.

Mr. Dodier:  None from the Defense.

(RR Vol. 2 at 166-67).

The jury was sworn the next morning prior to the start of the trial.  (RR Vol. 3 at 6).  There were no errors preserved for appeal, and there are no apparent fundamental errors.

## F.  **Jury Instructions.**

The jury charge contained the following instructions:

1.  Abstract and application of the charged offense, to wit—aggravated robbery  (CR at 81-84).

2.  Law of parties  (CR at 83-84).

3.  Defendant's election not to testify (CR at 85).

4.  Indictment (CR at 86).

5.  Presumption of innocence *Id.*

6.  Burden of proof, including reasonable doubt (CR at 86-87).

7.  Unanimity (CR at 87).

8.  Jury conduct, including deliberations and communications (CR at 87-88).

9.  Verdict form containing not guilty and guilty options (CR at 89).

The trial court inquired of both parties as to any objections or requests during the charge conference. (RR Vol. 4 at 46). Defense counsel objected to the law of parties instruction:

> I don't believe it was presented by the evidence. There is [sic] certainly no charges filed against the other individual. He's not a party. He's not—the allegations that are made are solely as to the defendant and none other. So, we would ask the Court not to include the parties allegation.
> (RR Vol. 4 at 47).

The trial court overruled the objection. *Id.* No further objections were made by either side. *Id.* No other jury charge issues were preserved and no fundamental error is apparent.

### a. Law of parties instruction given

In the case at bar, the jury charge contained the following instructions as to the law of parties:

> All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.
>
> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

[O]r if you find from the evidence beyond a reasonable doubt that on or about the 12th day of October, 2013, in Harris County, Texas, "Pirata", did then and there unlawfully, while in the course of committing theft of property owned by Jose Reyes, and with intent to obtain or maintain control of the property, intentionally or knowingly threaten or place Jose Reyes in fear of imminent bodily injury or death, and "Pirata" did then and there use or exhibit a deadly weapon, namely, a firearm, and that the defendant, Jose Aguilera, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid "Pirata" to commit the offense, if he did, then you will find the defendant guilty of aggravated robbery, as charged in the indictment.

(CR at 83-84).

### b. The trial court's instruction on the law of parties was not erroneous

This Court reviews jury charge error under the procedure authorized in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). First, this Court must determine if there is charge error. *Id.* "If there was error and appellant objected to the error at trial, reversal is required if the error 'is calculated to injure the rights of the defendant,' which we have defined to mean that there is 'some harm.'" *Id.* "Under the *Almanza* standard, the record must show that a defendant has suffered actual, rather than merely theoretical, harm from jury instruction error." *State v. Ngo*, 175 S.W.3d 738, 738, 750 (Tex. Crim. App.

2005)(en banc)(citing *Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999)).

The jury charge given tracked the language of the applicable sections of the Texas Penal Code regarding "Parties to Offenses" and "Criminal Responsibility for Conduct of Another." Tex. Pen. Code §§ 7.01(a); 7.02(a)(2). Also, there is no requirement that the other party be identified by name in the instruction as long as there is some evidence of the other party's identity in evidence. *Williams v. State*, 942 S.W.2d 787, 788 (Tex. App.—Fort Worth 1997, pet. ref'd). Multiple witnesses, including the complaining witness and Officer Horacio Pineda, identified Pirata as the other party to the offense. (RR Vol. 3 at 40-44, 71-74, 84). Moreover, the law of parties theory was raised by the evidence, *see* infra Statement of Facts, and Pirata was named in the jury charge. (CR at 84). Finally, there is not a legal requirement that other parties must be formally charged with the offense. Thus, there is no charge error.

Assuming *arguendo*, that there was jury charge error based on the law of parties instruction, any error would be harmless because the evidence supported Mr. Aguilera's guilt as a primary actor or the principal. *Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986); *See infra* Statement of Facts.

**G. Sufficiency of the Evidence, Including a Recitation of the Elements of the Offense and Facts and Evidence Adduced at Trial Relevant to the Offense Upon Which Conviction is Based.**

Aggravated robbery with a deadly weapon requires proof of the following elements:

1.  In the course of committing theft, a person

2.  With intent to obtain or maintain control of the property

3.  Intentionally or knowingly threatens or places another in fear of imminent bodily injury or death and

4.  Uses or exhibits a deadly weapon

Tex. Pen. Code § 29.02-29.03. Theft is the unlawful appropriation of property with the intent to deprive the owner of the property. Tex. Pen. Code § 31.03(a).

a.  The evidence adduced at trial

The complaining witness, Mr. Reyes, testified that this incident occurred on October 12, 2013 in Harris County, Texas. (RR Vol. 3 at 32, 47). He also identified Mr. Aguilera as the defendant in front of the jury. (RR Vol. 3 at 57).

26

### i. Theft

Mr. Reyes testified that Mr. Aguilera and Pirata took his wallet from his right pocket. (RR Vol. 3 at 43-44). Mr. Reyes testified that he had cashed his paycheck that day and his wallet contained between 700 and 800 dollars. (RR Vol. 3 at 33). He was unable to identify which of the two men actually took the wallet, but he was certain one of them did. (RR Vol. 3 at 44-45).

### ii. Intent

Mr. Reyes testified that Mr. Aguilera pointed a revolver at his side and Pirata pointed a semiautomatic gun at his head. (RR Vol. 3 at 42-43). He also testified that both men were screaming at him, Pirata struck him in the face, and Mr. Aguilera was saying "kill him, kill him." (RR Vol. 3 at 42-45, 72). Mr. Aguilera got in his car and Pirata's weapon jammed, so Mr. Reyes pushed Pirata and ran away. (RR Vol. 3 at 45-46, 72-73). Then, shots were fired at Mr. Reyes, but Mr. Aguilera was already in the car. (RR Vol. at 45-47, 73).

### iii. Deadly weapon

Mr. Aguilera identified his revolver and admitted to having it with him during the incident. (RR Vol. 5 at 46, 72-74). Moreover, Mr. Aguilera admitted to being an "accomplice to a robbery." (RR Vol. 5 at 78). Officer Kyle Myers

identified shell casings at the scene consistent with Mr. Reyes' account of the incident. (RR Vol. 3 at 20-21).

### b. The evidence was sufficient

Based on a totality of the circumstances and viewed in the light most favorable to the verdict, a jury could have rationally found each element of aggravated assault with a deadly weapon beyond a reasonable doubt. *Ervin v. State*, 331 S.W.3d 49, 53-56 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd)(citing *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)). Thus, the evidence is sufficient to support the conviction.

## H. Any Failure on the Part of the Appellant's Trial Counsel to Object to Fundamental Error.

After a thorough review of the record, no fundamental error is apparent.

## I. Any Adverse Rulings During the Punishment Phase on Objections or Motions.

The Prosecution presented two witnesses during punishment, Marsha Johnson and Officer Alan Nguyen. (RR Vol. 4 at 77-85, 86-96). Their testimony included evidence of other bad acts of Mr. Aguilera—failure to stop and give information and filing a false report. *Id.* Proper notice was given to defense

counsel pretrial. (CR at 24-25). No objections were made to this evidence. Defense counsel did not present any punishment evidence. (RR Vol. 4 at 96).

There were several hearsay objections lodged by Defense counsel during the punishment phase. First, Marsha Johnson was asked by the Prosecution, "Later on did Officer Nguyen ask you to identify somebody or if you recognized somebody that was the driver of the black Mustang or how did that happen?" (RR Vol. 4 at 83). Defense counsel objected to any hearsay as to what Officer Nguyen said, which was overruled by the trial court. (RR Vol. 4 at 84). This testimony was later admitted without objection from Officer Nguyen. (RR Vol. 4 at 93). "Overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Johnson v. State*, 425 S.W.3d 344, 346 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd)(citing *Leday v. State,* 983 S.W.2d 713, 718 (Tex.Crim.App.1998)).

Next, Officer Nguyen was asked by the Prosecution, "Did you see the person—was she able to give you a description of the person that had struck the complainant?" (RR Vol. 4 at 88). Defense counsel objected on hearsay grounds, and the court overruled the objection. *Id.* Marsha Johnson had previously provided this description in her testimony before the jury without objection. (RR Vol. 4 at 80); *Johnson*, 425 S.W.3d at 346. Defense counsel

lodged two additional hearsay objections to Officer Nguyen's testimony that were overruled. (RR Vol. 4 at 93-94). They both involved Marsha Johnson's identification of Mr. Aguilera. However, this description and identification of Mr. Aguilera was already in evidence. (RR Vol. 4 at 80, 85); *Johnson*, 425 S.W.3d at 346. No non-frivolous appellate issues resulted from the hearsay objections that were overruled.

## J. Whether the Sentence Imposed was Within the Applicable Range of Punishment.

Aggravated robbery is a first degree felony which "shall be punished by imprisonment in the Texas Department of Criminal Justice for life or for any term of not more than 99 years or less than 5 years." Tex. Penal Code § 29.03(b); § 12.32(a). A first degree felony also carries a potential $10,000 maximum fine. Tex. Penal Code § 12.32(b). The sentence imposed was 8.5 years imprisonment in the Texas Department of Criminal Justice without a fine. (CR at 101; RR Vol. 4 at 109). The sentence imposed was within the applicable range of punishment.

**K. Whether the Written Judgment Accurately Reflects the Sentence That was Imposed and Whether any Credit was Properly Applied.**

The written judgment accurately reflects the sentence that was imposed. (CR at 101, 104-05; RR Vol. 4 at 109). Credit was properly applied from the date of the arrest until the date of the conviction. (CR at 104; RR Vol. 3 at 90; RR Vol. 5 at 26).

**L. Examination of the Record to Determine if the Appellant was Denied Effective Assistance of Counsel.**

Discussed *supra,* in arguable grounds for review issues I and II.

## Prayer

For the reasons above, Appellant respectfully urges that this appeal presents no non-frivolous issues or grounds for relief. Appellant's Counsel respectfully requests that this Court grant the motion to withdraw. *Stafford v. State*, 813 S.W.2d 503, 510 (Tex. Crim. App. 1991). Appellant urges this Court grant such other relief as he may be entitled.

Respectfully submitted,

\_\_/s/ Emily Detoto_____
EMILY DETOTO
State Bar No. 00797876
917 Franklin, 4TH Floor

Houston, Texas 77002
(713) 227-2244
(713) 222-5840 (fax)
emilydetoto@mac.com


__/s/ Megan Smith_____
MEGAN E. SMITH
State Bar No. 24076196
917 Franklin, Suite 310
Houston, Texas 77002
(713) 899-5438
megan@megansmithlaw.com


Counsel for Appellant

## Certificate of Service

I hereby certify that a true and correct copy of the *Anders* Brief for Appellant was electronically delivered to Mr. Alan Curry, Appellate Division Chief, Harris County District Attorney's Office, on this 29th day of January 2015.

_____/s/ Emily Detoto_____
EMILY DETOTO

## Certificate of Compliance

I hereby certify, pursuant to Rule 9.4 of the Texas Rules of Appellate Procedure, that the instant brief is computer generated using Microsoft Word for Mac and said computer program has identified that there are 6,462 words within the portions of this brief required to be counted by Rule 9.4(i)(1)&(2) of the Texas Rules of Appellate Procedure. The document was prepared in proportionately spaced typeface using Times New Roman 14 for text and Times New Roman 12 for footnotes.

_____/s/ Emily Detoto_____
EMILY DETOTO

## Certificate of Notice to Appellant

The undersigned counsel affirms that the Notice to Client, *infra*, has been given to the appellant, Mr. Jose Aguilera, regarding his right to examine the appellate record and to file a pro se responsive brief.


_____/s/ Emily Detoto_____
EMILY DETOTO

## Notice to Client

Pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967) and Texas Rules of Appellate Procedure 34.5(g) and 34.6(h), as the appellant, you have the automatic right to examine the record on appeal and file a *pro se* responsive brief arguing that there are meritorious issues to appeal. A defendant who intends to file a responsive brief must notify the Court in writing within 14 days of receipt of the *Anders* brief and have the Court of Appeals set forth a date by which the brief will be filed.


_____/s/ Emily Detoto_____
EMILY DETOTO